

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| KENNY W. ROSE,<br>         Plaintiff,<br><br>vs.<br><br>SUMTER COUNTY SCHOOL DISTRICT,<br>and *in her individual capacity* BERTHA M.<br>TIMMONS,<br>         Defendants. | §<br>§<br>§<br>§<br>§   Civil Action No. 3:20-01008-MGL<br>§<br>§<br>§<br>§<br>§ |

**ORDER ADOPTING THE REPORT AND RECOMMENDATION,
GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S FEDERAL CLAIMS,
AND DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION
OVER PLAINTIFF'S STATE LAW CLAIMS**

Plaintiff Kenny W. Rose (Rose) filed this action against Defendants Sumter County School District (Sumter School District), and Bertha M. Timmons, in her individual capacity (Timmons) (collectively, Defendants), in the Sumter County Court of Common Pleas. Defendants subsequently removed the action to this Court under 28 U.S.C. § 1331. In Rose's complaint, he alleges causes of action for discrimination and retaliation in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et. seq.*, as well as state law causes of action for assault, battery, and negligent supervision. Specifically, as to Rose's ADA claims, he alleges Defendants subjected him to a hostile work environment that ended in constructive discharge, and retaliated against him for complaining of a hostile work environment.

This matter is before the Court for review of the Report and Recommendation (Report) of the United States Magistrate Judge recommending the Court grant Defendants' motion for summary judgment as to Rose's ADA causes of action and decline to exercise supplemental jurisdiction over Rose's state law claims. The Report was made in accordance with 28 U.S.C. § 636 and Local Civil Rule 73.02 for the District of South Carolina.

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The Court is charged with making a de novo determination of those portions of the Report to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1). The Court need not conduct a de novo review, however, "when a party makes general and conclusory objections that do not direct the court to a specific error in the [Magistrate Judge's] proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

The Magistrate Judge filed the Report on December 22, 2021, Rose filed his objections on January 5, 2022, and Defendants filed their reply on January 19, 2022. The Court has reviewed the objections, but holds them to be without merit. It will therefore enter judgment accordingly.

Rose "was employed by [Sumter School District] as a Guidance Counselor and Director of Guidance." Report at 1. Timmons "is the Assistant Principal at Crestwood High School [Crestwood] where [Rose] worked until January of 2019." *Id.* Timmons oversaw and supervised the guidance department at Crestwood. *Id.* at 2.

The Magistrate Judge, in his Report, spilled significant ink detailing Rose's negative interactions with Timmons while employed at Crestwood. *See id.* at 2–7. In a nutshell, Rose, who

2

suffers from severe anxiety, avers Timmons repeatedly created a hostile work environment during his time at Crestwood. *Id.* Rose continuously informed numerous individuals at Sumter School District regarding his negative interactions with Timmons and the anxiety resulting therefrom. *Id.* But, "it is undisputed in the record that Timmons did not have any knowledge of [Rose's] disabilities [or] medical conditions [during their acrimonious relationship at Crestwood.]" *Id.* at 10.

Ultimately, Rose met with Crestwood's principal, Dr. Shirley Gamble (Gamble), Sumter School District's chief human resources director, Dr. John Koumas (Koumas), and assistant superintendent, Dr. Hafner (Hafner), where he "relayed his concerns regarding Timmons and the hostile work environment which caused him ongoing stress." *Id.* at 6. At this meeting with Gamble, Koumas, and Hafner, Rose "requested that another administrator be assigned to oversee the guidance department at [Crestwood], but if that was not possible, that [he] be transferred to another school." *Id.* "Effective January 21, 2019, [Rose] was transferred to the Adult Education Center (AEC) for the remainder of the . . . school year[,]" *id.*, away from Timmons's supervision.

Approximately four months after Rose's transfer to the AEC, Koumas informed him "that he was being reassigned as the guidance counselor at Ebenezer Middle School [Ebenezer] for the [following] school year." *Id.* After being informed of his upcoming transfer to Ebenezer, Rose "requested reconsideration of the reassignment and . . . requested a meeting [with Koumas and Sumter School District's superintendent, Dr. Hamm (Hamm),] to discuss it." *Id.* Rose then met with Koumas and Hamm, after which Hamm "denied [Rose's] request to remain at the AEC." *Id.* at 7. Rose, approximately three months after this meeting with Koumas and Hamm, and over seven months after his transfer to the AEC, "submitted his notice of retirement effective [the following month]," *id.*, and this lawsuit soon followed.

3

Rose presents two objections to the Report that the Court will now address. As to the first, Rose objects to the Magistrate Judge's "finding that he failed to show that he was subjected to a hostile work environment because of his disability." Obj. at 4. Specifically, Rose avers the Report "ignores critical evidence that other [Sumter School District] supervisory employees were aware of [his] disability and protected activity, [and they] helped perpetuate the harassment, discrimination, and retaliation that [he] suffered from" by failing to prevent Timmons from creating a hostile work environment. *Id.*

To establish a hostile work environment claim under the ADA, a plaintiff must prove "(1) he is a qualified individual with a disability; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability for the harassment to the employer." *Fox v. General Motors Corp.*, 247 F.3d 169, 177 (4th Cir. 2001).

In the context of a discriminatory termination claim under the ADA, "an employer cannot fire an employee 'because of' a disability unless it knows of the disability." *Hedberg v. Indiana Bell Tel. Co. Inc.*, 47 F.3d 928, 932 (7th Cir. 1995). If the employer "does not know of the disability, the employer is firing the employee 'because of' some other reason." *Id.* "Though the adverse action here is a hostile work environment rather than a termination, the reasoning is the same." Report at 11.

Furthermore, although knowledge of the disability is "absolutely necessary" to show the creation of a hostile work environment because of a disability, *see Smith v. CSRA*, 12 F.4th 396, 420 (4th Cir. 2021) (citation omitted) (discussing knowledge in the retaliation context), knowledge alone is insufficient to show a plaintiff was subjected to a hostile work environment because of his

disability, s*ee, e.g., Cannice v. Norwest Bank Iowa N.A.*, 189 F.3d 723, 726 (8th Cir. 1999) (dismissing a hostile work environment claim under the ADA where there was no evidence the defendant's knowledge of any disability in any way motivated the offensive conduct and noting the harassment "may have exacerbated his disability, but there is no evidence that [it] happened 'because of' his disability.").

Here, although Rose, in his objection, contends the Magistrate Judge ignored "evidence that other [Sumter School District] supervisory employees were aware of [his] disability and protected activity, [and they] helped perpetuate the harassment, discrimination, and retaliation that [Rose] suffered from[,]" Obj. at 4, a review of the Report directly refutes this contention.

The Magistrate Judge specifically addressed, and dismissed, this argument. *See* Report at 11–12 (noting, although evidence Rose informed Sumter School District supervisory employees of his anxiety and alleged hostile interactions with Timmons "may be sufficient to meet the fifth element of a hostile work environment claim—that some factual basis exists to impute liability for the harassment to the employer[,]—it is insufficient to show that the actual harassment itself occurred because of [Rose's] disability."); Reply at 3 (noting Rose's contention "the Magistrate [Judge] failed to consider what the supervisors knew and how they responded" is "not true" and discussing how "[t]he Magistrate Judge considered not only . . . Timmons'[s] lack of knowledge but also discussed [Rose's] failure to produce evidence that anyone's actions toward him were motivated by his disability.").

At bottom, "[j]ust because [Rose] told several supervisory individuals within [Sumter School District] that he suffered from anxiety does not mean that any hostile treatment he received was because of his anxiety." Report at 12. Consequently, this objection will be overruled.

Turning to Rose's second objection, he argues the Report "wrongfully stopped its [constructive discharge] analysis by assuming an automatic bar to constructive discharge [occurred] after [Rose] had been transferred [to the AEC,]" and "[t]here can be situations, like this one, in which working conditions remain intolerable after a transfer away from a harasser, due to the long-lasting physiological damage inflicted on a plaintiff." Obj. at 11.

To prove constructive discharge, "the plaintiff must demonstrate first that he was, in fact, constructively discharged—i.e., that the defendant [deliberately] made the working conditions so intolerable as to force a reasonable employee to leave." *Vitug v. Multistate Tax Comm'n*, 88 F.3d 506, 517 (7th Cir. 1996). And, "[o]nce a plaintiff has shown that a constructive discharge occurred, he must prove, as with any other discharge claim under [the ADA], that he was constructively discharged because of his membership in a protected class." *Id.*

"An employer's actions are deliberate only if they 'were intended by the employer as an effort to force the plaintiff to quit.'" *Id.* (quoting *Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 272 (4th Cir. 2001)). "Whether an employment environment is intolerable is determined from the objective perspective of a reasonable person." *Id.* "However, mere '[d]issatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign.'" *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 378 (4th Cir. 2004) (quoting *Carter v. Ball*, 33 F.3d 450, 459 (4th Cir. 1994)). Because the claim of constructive discharge is so open to abuse by those who leave employment on their own accord, [the Fourth Circuit] has insisted that it be carefully cabined." *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 187 (4th Cir. 2004) (internal citation omitted).

Here, Rose cites to *Alicea Rosado v. Garcia Santiago*, 562 F.2d 114 (1st Cir. 1977) for the proposition working conditions may remain intolerable after a transfer due to the long-lasting psychological damage inflicted at the previous workplace.  But, Rose's citation to, and reliance on, *Rosado* is misplaced.

In that case, the appellate court reversed the district court's conclusion an employer constructively discharged its employee and remanded for further examination on that issue.  *Id.* at 116–20.  The appellate court reasoned "[i]nsofar as the district court rested its findings of constructive discharge on the loss of prestige entailed in the transfer, we think it erred." *Id.* at 119.  Missing from *Rosado* is any discussion on the lasting effects from harassment in the workplace that guarantees a finding of constructive discharge, even after a transfer is granted and the plaintiff spends numerous months at a new workplace without incident.

Nevertheless, as is directly relevant to Rose's objection, the Magistrate Judge, in his Report, aptly noted "it is undisputed that [Sumter School District] granted [Rose's] request to be transferred to a different school[,]" and there "is no evidence in the record that [Rose] was subjected to unwelcome harassment from Timmons following the transfer [to a different school in January of 2021 and over seven months before his resignation]."  Report at 13.  Consequently, Rose is unable to "show that his working conditions at the time he resigned were so intolerable that he had no choice to resign[,]" *id.*, As such,  this objection will be overruled, too.

After a thorough review of the Report and the record in this case pursuant to the standard set forth above, the Court overrules Rose's objections, adopts the Report, and incorporates it herein.  Therefore, it is the judgment of the Court Defendants' motion for summary judgment as to the ADA claims is **GRANTED**, and they are **DISMISSED WITH PREJUDICE**.

Because the Court declines to exercise supplemental jurisdiction over Rose's state law claims, those claims are **REMANDED** to the Sumter County Court of Common Pleas.

**IT IS SO ORDERED**.

Signed this 1st day of March 2022, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE
